TAYLOR *v.* BEAN, CHANCELLOR

5-2749                                355 S. W. 2d 602

Opinion delivered April 2, 1962.

*McMath, Leatherman, Woods & Youngdahl,* for petitioners.

*Jack Rose* and *Robert E. Irwin,* for respondent.

GEORGE ROSE SMITH, J. Ten days ago the petitioners, as representatives of the Communication Workers of America, an unincorporated labor union, applied to this court for a temporary writ of prohibition to restrain the respondent from proceeding further in a case pending in the Pope chancery court. The writ was granted by a *per curiam* order which explained that a written opinion in the matter would be delivered later. This is that opinion.

Eighty-one employees of Western Arkansas Telephone Company, Inc., filed the suit below against their employer and against the petitioners as representatives of the union. The complaint alleged that the plaintiffs constituted a majority of the company's 113 employees and that they did not wish to be represented by the union in collective bargaining with the employer. The prayer was that the defendants be enjoined from engaging in any labor-management negotiations that might affect the rights of the plaintiffs.

When the complaint was filed the chancellor issued a temporary order enjoining the employer and the union from negotiating with respect to the rights of the plaintiffs. At a hearing a few weeks later the chancellor overruled the petitioners' objections to the court's jurisdiction and continued the preliminary order in force. The present application for prohibition was then filed here.

It is conceded that the employer is engaged in interstate commerce to an extent sufficient to make its labor relations subject to the Taft-Hartley Law, 29 USCA §§ 151 et seq. On November 15, 1960, the National Labor Relations Board, after having conducted an elec-

tion among the company's employees, certified that this labor union had been selected as the exclusive bargaining unit by a vote of 61 to 59. This is the authority under which the union now asserts the right to represent the telephone company's employees in negotiations for a labor contract.

The federal law provides that a new election cannot be held until at least a year has elapsed since the last valid election. 29 USCA § 159 (c) (3). Accordingly on December 12, 1961, which was about thirteen months after the first election, the 81 dissatisfied employees filed with the National Labor Relations Board what is referred to as a decertification petition, asking that a new election be conducted to determine whether the union was still favored by a majority of the workers. 29 USCA § 159 (c) (1) (A) (ii). This petition was dismissed by the Board because there was then pending before the Board a charge by the union that the employer had been guilty of unfair labor practices. It is the established policy of the Board not to consider an application for an election until such charges have first been disposed of. Upon the dismissal of their decertification petition the 81 employees filed the suit in equity, asking, among other things, that the chancellor determine whether the union now represents a majority of the telephone company's employees.

The Supreme Court of the United States has repeatedly held that in some areas of labor law the state courts have concurrent jurisdiction with federal agencies, but in other areas Congress has completely preempted the field, to the exclusion of any jurisdiction in state tribunals. In determining whether the states' jurisdiction has been superseded it is important to consider the extent to which Congress has expressly vested authority in the National Labor Relations Board and also the extent to which conflicts might arise of concurrent jurisdiction were recognized. *Garner* v. *Teamsters etc. Union,* 346 U. S. 485, 98 L. Ed. 228, 74 S. Ct. 161; *Weber* v. *Anheuser-Busch, Inc.,* 348 U. S. 468, 99 L. Ed. 546, 75 S. Ct. 480.

In the case at bar it is clear that the federal law has pre-empted the field. The Taft-Hartley Act provides that the bargaining representative chosen by the majority of the employees in a unit "shall" be the exclusive representative of all the employees. 29 USCA § 159 (a). The Board "shall" decide in each case what is the appropriate bargaining unit. § 159 (b). When a petition is filed, either for an original election or for a decertification as here, the Board "shall" investigate the matter and, if a question exists, "shall" direct an election by secret ballot and certify the results. § 159 (c). The language of the act is mandatory in every particular and plainly expresses a legislative intention to invest the Board with the sole power to act. It is quite apparent that concurrent jurisdiction would frequently lead to conflicting decisions, since in a close case the sentiment for and against the union might vary almost from day to day. Congress evidently concluded that industrial peace would best be achieved by making the outcome of each election binding upon all concerned for at least a year.

In a very similar case, *Bethlehem Steel Co.* v. *N. Y. State L. R. B.*, 330 U. S. 767, 91 L. Ed. 1234, 67 S. Ct. 1026, it was held that the Board's determination of the appropriate unit for bargaining purposes was controlling and left no room for a decision in the matter by a state labor relations board. That holding, together with many similar ones, convinces us that the state court is without jurisdiction in the present dispute. The writ of prohibition was accordingly granted.